**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| SHEILA A. JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:24-cv-02058-TLP-cgc |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING DECISION OF THE COMMISSIONER

Plaintiff Sheila Jackson seeks judicial review of the Commissioner of Social Security Administration's ("SSA") decision denying her disability insurance benefits under Title II of the Social Security Act.  For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## BACKGROUND

The Court will first explain the five-step process an administrative law judge ("ALJ") uses to decide whether an applicant is disabled.  After that, the Court will describe the eight-step process an ALJ uses to decide whether a disability claimant continues to be disabled.  The Court also sets out the ALJ's findings about whether Plaintiff continues to be disabled and her medical conditions.   Then, the Court will present the procedural history of this case.

I.     **Five-Step Sequential Process**

Under the Social Security Act, the first question is whether Plaintiff is disabled. Congress defines "[d]isability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can

1

be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). And to decide whether a person is disabled, the ALJ uses a five-step evaluation.

20 C.F.R. § 404.1520(a)(4)(i–v). The applicant bears the burden of proving the first four steps.

*See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482

U.S. 137, 146 (1987)). But, at the fifth step, "[t]he burden of proof shifts to the Commissioner . .

. [to prove] that there is work available in the economy" that Plaintiff can perform. *Id.* at 391.

The ALJ first looks at whether the applicant is currently engaged in substantial gainful

activity ("SGA"). *See* 20 C.F.R. § 404.1520(a). SGA is "work activity that involves doing

significant physical or mental activities." 20 C.F.R. § 416.972(a)(4)(i). If the applicant is

engaged in SGA, then the analysis ends there. *See* 20 C.F.R. § 404.1520(a)(4)(i).

The ALJ then analyzes in the second step whether the applicant has a medically

determinable impairment, or a combination of impairments, that meets the definition of "severe."

*See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it significantly limits the

person's ability to perform basic work activities. *See* 20 C.F.R. § 416.920(c). But the

impairment is not severe if the medical information establishes only a "slight abnormality that

minimally affects work ability regardless of age, education, and experience." *Higgs v. Bowen*,

880 F.2d 860, 862 (6th Cir. 1988).

In the third step, the ALJ must determine whether the applicant's impairments either meet

or medically equal the criteria of an Appendix 1 listing. 20 C.F.R. § 404.1520(a)(4)(iii). If so,

the applicant is disabled. *Id*. If not, the ALJ looks further to determine the applicant's "residual

functional capacity" ("RFC") to perform past work. 20 C.F.R. § 404.1545. RFC refers to an

individual's ability to do physical and mental work on a sustained basis despite the limitations

from the impairments. 20 C.F.R. § 404.1520(e).

Fourth, if she has the RFC to perform the requirements of her past relevant work, the applicant is not disabled, and the analysis ends here. *See* 20 C.F.R. § 404.1520(a)(4)(iv). But if the applicant does not have the RFC to return to her past work, then the analysis goes on to the fifth and final step. *Id*. Finally, the ALJ will evaluate the applicant's ability to do any other work given her RFC, age, education, and work experience. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the applicant cannot perform other work, then she qualifies as disabled. *Id.*

## II.     Eight-Step Continuing Disability Test

But if an applicant qualifies for and receives benefits, that is not the end of the inquiry for forever. Rather the SSA periodically reviews disability benefit recipients' cases to determine whether they remain disabled. 20 C.F.R. § 404.1594(a). In deciding whether a claimant is still disabled, the SSA decides on a "neutral basis" with no "initial inference as to the presence or absence of disability being drawn from the fact that [the claimant has] previously been determined to be disabled." 20 C.F.R. § 404.1594(b)(6). But unlike in an initial proceeding, "the ultimate burden of proof lies with the Commissioner in termination proceedings." *Kennedy v. Astrue*, 247 F. App'x 761, 765 (6th Cir. 2007). When deciding whether a claimant continues to be disabled, the SSA, and its ALJs, follow an eight-step process. *See* 20 C.F.R. § 404.1594(f).

In this eight-step continuing disability evaluation, the ALJ first looks at whether the claimant is currently engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1594(f)(1). If the applicant is engaged in SGA, then the analysis ends there. (*Id.*) But if not, the ALJ moves to step two where the ALJ analyzes whether the claimant's impairments either meet or medically equal the criteria of an Appendix 1 listing. 20 C.F.R. § 404.1594(f)(2). If not, the ALJ goes to step three to assess whether there has been medical improvement. 20 C.F.R. § 404.1594(f)(3).

The definition of medical improvement appears in the C.F.R.

Medical improvement is any decrease in the medical severity of your impairment(s)
which was present at the time of the most recent favorable medical decision that
you were disabled or continued to be disabled. A determination that there has been
a decrease in medical severity must be based on improvement in the symptoms,
signs, and/or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1594(b)(1). If there is medical improvement, the ALJ proceeds to step four. 20

C.F.R. § 404.1594(f)(3). But if not, the ALJ skips to step five. (*Id.*) At step four, the ALJ

assesses whether the medical improvement relates to the claimant's ability to work. 20 C.F.R. §

404.1594(f)(4). If it does not, the ALJ goes to step five. (*Id.*) But if there is medical

improvement and it relates to one's ability to work, the ALJ jumps to step six. (*Id.*)

At step five, the ALJ considers whether any exceptions to the medical improvement rule

apply. 20 C.F.R. § 404.1594(f)(5). There are three possible scenarios after step five: (1) no

exception applies and the ALJ will find that the disability continues; (2) a group one exception

applies and the ALJ goes to step six; or (3) a group two exception applies and the ALJ decides

that the claimant's disability has ended. (*Id.*) Group one exceptions include situations where an

improved diagnostic or evaluative technique shows that a claimant's impairment is not as

disabling as first thought or where an earlier disability decision was made in error. That said,

group two exceptions account for situations where a claimant fails to cooperate with the SSA, the

SSA cannot find a claimant, an earlier decision was fraudulently obtained, or a claimant fails to

follow prescribed treatment.[1] 20 C.F.R. § 404.1594(d)–(e). An ALJ can find that a group two

exception applies at any time during the eight-step evaluation.

---

[1] The prescribed treatment exception applies when a claimant fails to follow "prescribed
treatment which would be expected to restore your ability to engage in substantial gainful
activity." 20 C.F.R. § 404.159(e)(4). The exception provides,

Next, at step six, the ALJ determines whether all a claimant's "current impairments in combination are severe." 20 C.F.R. § 404.1594(f)(6).  If not, the ALJ will find that a claimant's disability has ended.  *Id.*  But if so, the ALJ moves to step seven, where the ALJ will assess the claimant's RFC and decide whether the claimant can return to past relevant work.  20 C.F.R. § 404.1594(f)(7).  If the claimant can return to past relevant work, the ALJ will find that the claimant's disability has ended.  *Id.*  But if the claimant is unable to return to past relevant work, the ALJ proceeds to step eight.  *Id.*

At step eight, the ALJ "will consider whether [the claimant] can do other work given the residual functional capacity assessment" and the claimant's "age, education, and past work experience." 20 C.F.R. § 404.1594(f)(8).  If the claimant can do other work, the ALJ will find that the claimant's disability has ended.  *Id.*  But if the claimant cannot do other work, the ALJ will find that the disability continues.  *Id.*

The Court will now provide the procedural history of this case.

## III.    Procedural History and Findings

In May 2000, an ALJ of the SSA found Plaintiff disabled under Title II of the Social Security Act as of June 20, 1997.  (ECF No. 9-2 at PageID 41.)  And on March 18, 2008, the SSA found that Plaintiff remained disabled due to her migraine headaches.  (*Id.* at PageID 43, 258.)  But on January 31, 2014, after Plaintiff failed to respond to the SSA, the SSA made an

---

If treatment has been prescribed for you which would be expected to restore your ability to work, you must follow that treatment in order to be paid benefits.  If you are not following that treatment and you do not have good cause for failing to follow that treatment, we will find that your disability has ended (see § 404.1530(c)).  The month your disability ends will be the first month in which you failed to follow the prescribed treatment.

*Id.*

initial determination that, as of January 6, 2014, Plaintiff was no longer disabled.  (*Id.* at PageID 260–61.)  And that determination was upheld upon reconsideration.  (*Id.* at PageID 262.) Plaintiff then appealed the decision to an ALJ.

The ALJ held a hearing in July 2015.  (ECF No. 9-3 at PageID 266.)   And in October 2015, the ALJ issued a decision in which he found that Plaintiff was no longer disabled as of January 6, 2014.  (*Id.* at PageID 266–73.)  Plaintiff then requested review of this decision, and the Appeals Council vacated the decision and remanded the case to the ALJ.  (*Id.* at PageID 281.)  The ALJ had adjudicated the period up to January 6, 2014, the date Plaintiff stopped receiving benefits.  But as the Appeals Council explained, the ALJ also needed to adjudicate the time up to the date of his decision or Plaintiff's date last insured, whichever was earlier.  (*Id.*) On remand, the ALJ adjudicated the time between January 6, 2014, and December 31, 2017— Plaintiff's date last insured.  (*Id.* at PageID 288.)  In a decision dated May 9, 2018, the ALJ found that Plaintiff was not disabled from January 6, 2014, through May 1, 2017.  (*Id.* at PageID 288–96.)  But the ALJ also found that Plaintiff became disabled beginning May 1, 2017.  (*Id.* at PageID 296.)  Plaintiff then sought further review.

At Plaintiff's request, the Appeals Council reviewed the decision.  (*Id.* at PageID 304– 06.)  The Appeals Council vacated the decision and remanded the case to a new ALJ.  (*Id.*)  The Appeals Council explained that the ALJ found medical improvement as of January 6, 2014, but that the ALJ did not point to "symptoms, signs, or laboratory findings in evaluating medical improvement."  (*Id.*)  That said, the Appeals Council also noted that the ALJ could consider the exception to medical improvement for failing to follow prescribed treatment.  (*Id.*)  In remanding the case, the Appeals Council also explained that the ALJ erred in considering Plaintiff's prior

work as a data entry clerk as past relevant work, given that she worked that job over 15 years before. (*Id.*)

A new ALJ then took up Plaintiff's case. The ALJ held a hearing on March 1, 2021, in which Steven S. Goldstein, M.D., an impartial medical expert, and Jeannine Salek, an impartial vocational expert, testified. (*Id.* at PageID 311.) Plaintiff also testified. (*Id.*) The ALJ issued a decision on March 24, 2021, holding that Plaintiff's disability ended on January 6, 2014. (*Id.* at PageID 331.) He further found that Plaintiff did not become disabled again before her date last insured of December 31, 2017. (*Id.*) In reaching this conclusion, the ALJ found that Plaintiff experienced medical improvement as of January 6, 2014. (*Id.* at PageID 314.) The ALJ also found that Plaintiff had no past relevant work but that she was able to perform many jobs in the national economy. (*Id.* at PageID 330.)

Again, at Plaintiff's request, the Appeals Council reviewed the ALJ's decision. (*Id.* at PageID 341–42.) The Appeals Council vacated the decision and remanded the case to the ALJ. (*Id.*) The Appeals Council explained that the ALJ evaluated the medical opinion evidence under the incorrect regulation. (*Id.*) The Appeals Council also found that the ALJ's finding that Plaintiff needs to avoid "noise above the level 3 on a scale of 1 to 5" was vague. (*Id.*)

The same ALJ then held another hearing on January 19, 2023. (*Id.* at PageID 41.) At the hearing, both Plaintiff and an impartial vocational expert, Laura Lykins, testified. (*Id.*) In the end, the ALJ found "[t]he claimant's disability ended on January 6, 2014, and the claimant has not become disabled again prior to her date last insured of December 31[,] 2017." (*Id.* at PageID 56.) In reaching this conclusion, the ALJ applied the eight-step evaluation process to determine whether Plaintiff continued to be disabled and listed these findings:

1.    The most recent favorable medical decision finding that the claimant continued to be disabled is the decision dated March 12, 2008.  This is known as the "comparison point decision" or CPD.

2.    At the time of the CPD, the claimant had the following medically determinable impairment: migraine headaches.  This impairment was found to significantly restrict the claimant's mental and physical functioning including her activities of daily living.

3.    The claimant has not engaged in substantial gainful activity (20 CFR 404.1594(f)(1)).

4.    The medical evidence establishes that from January 6, 2014, through her date last insured of December 31, 2017, the claimant had the following medically determinable impairments: migraine and cluster headaches, arthritis of the knees, pseudo-gout, residual effects of a repaired Achilles tendon tear and hypothyroidism.   These are the claimant's current impairments.

5.    From January 6, 2014, through her date last insured of December 31, 2017, the claimant has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6.    Medical improvement occurred on January 6, 2014 (20 CFR 404.1594(b)(1)).

7.    Since January 6, 2014, the impairment present at the time of the CPD had decreased in medical severity to the point where the claimant has had the residual functional capacity to perform work at all exertional levels, but must avoid concentrated exposure to temperature extremes, bright light, such as direct sunlight, strong odors such as chemicals, and noise levels above the moderate level on a scale of very quiet, quiet, moderate, noisy, and very noisy.  She also had to avoid concentrated exposure to vibrations, and work hazards (including unprotected heights and dangerous machinery).

8.    The claimant's medical improvement relates to the ability to work because it resulted in an increase in the claimant's residual functional capacity (20 CFR 404.1594(c)(3)(ii)).

9.    Since January 6, 2014, the claimant has continued to have a severe impairment or combination of impairments (20 CFR 404.1594(f)(6)).

10.     Based on the impairments present since January 6, 2014, through the date last insured, the claimant has had the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b).  Specifically, she had the ability to lift/carry and push/pull 20 pounds occasionally (up to one-third of the day), and 10 pounds frequently (up to two-thirds of the day); sit for four hours at a time and a total of eight hours during an eight-hour day, and stand and/or walk for two hours at a time and a total of six hours during an eight-hour day, with customary breaks.  She could occasionally climb ladders and stair/ramps; frequently balance; occasionally kneel, stoop, crouch and crawl; and had no limitations concerning manipulation, vision or communication with the exception of some environmental limitations relating to her headaches. She had to avoid concentrated exposure to temperature extremes, noise levels above the moderate level on a scale of very quiet, quiet, moderate, noisy and very noisy, vibrations, and work hazards (including unprotected heights and dangerous machinery).  She also had the need to avoid concentrated exposure to bright lights such as direct sunlight and strong odors such as chemicals.  She had no significant mental limitations.

11.     The claimant has no past relevant work (20 CFR 404.1565).

12.     On January 6, 2014, the claimant was a younger individual age 18-49 (20 CFR 404.1563).

13.     The claimant has at least a high school education (20 CFR 404.1564).

14.     Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

15.     Since January 6, 2014, considering the claimant's age, education, work experience, and residual functional capacity based on the impairments present since January 6, 2014, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

16.     The claimant's disability ended on January 6, 2014, and the claimant has not become disabled again prior to her date last insured of December 31. 2017 (20 CFR 404.1594(f)(8)).

(*Id.* at PageID 42–56.)  Plaintiff requested that the Appeal Council review the decision, but the

Council denied review.  (*Id.* at PageID 25.)  Plaintiff now appeals the decision to this Court.

## STANDARD OF REVIEW

Courts evaluate an ALJ's social security decision with a deferential standard. "In social security cases, the Commissioner determines whether a claimant is disabled within the meaning of the Social Security Act and thereby entitled to benefits." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citing 42 U.S.C. § 405(h) (2018)). The district court's review of that determination "is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "Substantial evidence requires more than a mere scintilla, but less than a preponderance; substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (internal quotation marks and citations omitted). "[I]f substantial evidence supports the ALJ's decision, [the] [c]ourt defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley*, 581 F.3d at 406 (quoting *Key*, 109 F.3d at 273); *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("When deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."). That said, the reviewing court must find a lack of substantial evidence when the ALJ fails to follow agency rules and regulations, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (internal citation and quotation marks omitted).

## **STATEMENT OF ERRORS**

Plaintiff asserts that the ALJ made several errors including the decision to deny her

benefits.  The Court will relay each of the alleged errors here and then address each in turn.[2]

As her first argument, Plaintiff asserts that "Judge Terry used missed medical

appointments and selected other evidence to determine that the plaintiff did not meet the criteria

for disability under 20 CFR 404.1594."  (*Id.*)  And, with this, Plaintiff argues that the ALJ's

decision was "unjust."  In her Reply Brief, Plaintiff adds that the ALJ erred in considering her

physical activity.  (ECF No. 30 at PageID 2032–33.)

Next, Plaintiff alleges that the ALJ "initiated the hearing late," which caused "the

Medical Professional who testified to leave early without addressing whether the plaintiff's

condition was chronic and unlikely to disappear."  (*See* ECF No. 27 at PageID 2018.)  After that,

Plaintiff seems to challenge the ALJ's usage of her Veterans Affairs disability rating.  (*Id.* at

---

[2]  In her Reply Brief, Plaintiff alleged additional errors.  In general, errors a plaintiff alleges only
in her reply brief are waived.  *Blount v. Colvin*, No. 5:13 CV 1709, 2014 WL 4231182, at *10
(N.D. Ohio Aug. 21, 2014); *Gleason v. Comm'r of Soc. Sec.*, No. 3:13-CV-231, 2014 WL
3734322, at *4 (S.D. Ohio July 28, 2014), *report and recommendation adopted*, 2014 WL
4348247 (S.D. Ohio Sept. 2, 2014) ("By failing to present this argument in his Statement of
Errors, the Court finds such argument waived.").  That said, the Court recognizes that Plaintiff is
pro se.  So the Court will consider in this Order all the alleged errors Plaintiff has raised, whether
raised in her Reply Brief or in her initial brief.  And yet, as the Commissioner points out, at times
Plaintiff's arguments are unclear, conclusory, or overbroad.  (*See, e.g.*, ECF No. 30 at PageID
2033 ("The ALJ concluded that Plaintiff was capable of performing a reduced range of light
work determination that hinges on an interpretation of her residual functional capacity.
However, the ALJ applied an overly optimistic view of what "light work" entails.  In reality, the
limitations imposed by her migraines and joint pain, especially given her age and lack of past
relevant work experience, render even minimal work tasks excessively taxing.")  Other times,
Plaintiff's arguments are specific enough.  The Court has done its best to distill Plaintiff's
arguments in order to be able to address them.  But in the end, the Court need not address issues
raised in conclusory or unclear fashion.  *Doolittle v. Comm'r of Soc. Sec.*, No. 18-4176, 2019
WL 6464019, at *2 (6th Cir. Sept. 4, 2019) ("By failing to advance any specific argument to
support the issues identified in her brief, [the pro se plaintiff] has waived any possible challenge
to the ALJ's ruling.").

PageID 2018–19.)  Plaintiff then argues that "Judge Terry only considered the medical opinion provided during the hearing and failed to consider the [independent medical evaluation] submitted by the plaintiff from Dr. Marvin Jones who not only evaluated the plaintiff but provided [a] detailed opinion."  (*Id.* at PageID 2019.)  Plaintiff also argues that the ALJ failed to give adequate consideration to vocational factors.  (*Id.* at PageID 2019; ECF No. 30 at PageID 2033.)  And lastly, Plaintiff asserts that before the cessation of her benefits, the SSA failed to offer her a trial work period.  (ECF No. 27 at PageID 2020.)

The Court now addresses each alleged error.

## ANALYSIS

## I.    Missed Medical Appointments, Other Selected Evidence, and Physical Activity

Plaintiff claims that the ALJ used "missed medical appointments and selected other evidence to determine that the plaintiff did not meet the criteria for disability under 20 CFR 404.1594."  (ECF No. 27 at PageID 2018.)  And with this, Plaintiff argues the ALJ's decision was unjust.  (*Id.*)  Plus, in her Reply, Plaintiff questions the ALJ considering her physical activity.  (ECF No. 30 at PageID 2032.)

When evaluating a plaintiff's symptoms, an ALJ completes a two-step process.  First the ALJ decides whether there is a medically determinable impairment that could reasonably be expected to cause the plaintiff's pain or other symptoms.  *See* 20 C.F.R. § 404.1529(a).  Then the ALJ evaluates the intensity, persistence, and limiting effects of the symptoms to decipher how the symptoms limit the plaintiff's work-related activities.  *See* 20 C.F.R. § 404.1529(c).  In evaluating the symptoms, the ALJ may consider factors such as the plaintiff's daily activities.  *See id.*

With that in mind, when evaluating whether a plaintiff's symptoms affect her ability to do work-related activities, the ALJ will consider "an individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed." *Social Security Ruling 16-3p Titles II and XVI: Evaluation of Symptoms in Disability Claims* (reprinted at 2017 WL 5180304, at *1, 13 n.27 (SSA Oct. 25, 2017)) ("SSR 16-3p"). To that end, "[p]ersistent attempts to obtain relief of symptoms…may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." *Id.*

On the other hand, "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the ALJ] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* That said, the ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* And the ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints." *Id.* The Court now takes up Plaintiff's arguments about the evidence on which the ALJ relied.

As noted above, Plaintiff objects to the ALJ considering "missed medical appointments." (ECF No. 27 at PageID 2018.) In evaluating Plaintiff's symptoms and how Plaintiff's symptoms may limit her ability to work, the ALJ noted that Plaintiff "declined to attend a physical therapy evaluation at the recommendation of her doctor." (ECF No. 9-2 at PageID 55; *see* ECF No. 10-3

at PageID 1293.)  Although Plaintiff failed to specify the appointments at issue, the Court assumes that this physical therapy evaluation is the missed medical appointment in question.

The record shows that the ALJ properly considered this missed appointment.  When assessing a plaintiff's symptoms, an ALJ can look to the frequency or extent of the treatment sought and whether a plaintiff follows prescribed treatment.  *See* SSR 16-3p.  And Plaintiff's failing to attend a physical therapy evaluation is evidence from which one may conclude that her symptoms are not as intense as she claims.   Of course, it is true that an ALJ should consider potential reasons why a plaintiff failed to follow through on treatment, and the ALJ may need to inquire into these reasons during the hearing.  *Id.*  But this record shows that ALJ did just that.[3]

In fact, in the March 1, 2021, hearing, the ALJ asked about missed medical appointments.[4]  (ECF No. 9-2 at PageID 149.)  And, in response, Plaintiff stated:

> I missed an appointment.  It was because of, I don't typically just not go to an appointment.  Well, I won't even say because headache because I didn't feel well if I missed an appointment.  And no, I never just decided, hey, yeah, I have this appointment, I'm not going to go.

(*Id.*)  While not the clearest statement, it seems that Plaintiff is asserting that she missed the medical appointment because she did not feel well.  (*See id.*)

Evidently, given that the ALJ relied on the missed medical appointment in his decision, he did not find her answer persuasive.  (*See id.* at PageID 55.)  And the record supports that this excuse does not stack up.  In fact, the record lacks a good reason why Plaintiff would have missed this appointment other than her symptoms were not intense or persistent.  Indeed, later

---

[3] Besides, Plaintiff has not argued to this Court that the ALJ overlooked other reasons why she missed the evaluation, and Plaintiff has provided no reason to this Court explaining why she missed the evaluation that the ALJ overlooked.  Plaintiff simply complains that the ALJ considered "missed medical appointments."  (ECF No. 27 at PageID 2018.)

[4] The ALJ who conducted the March 1, 2021, hearing is the same ALJ who wrote the decision currently under review.

medical records do not show that Plaintiff rescheduled the appointment once she felt better.

(*See, e.g.*, ECF No. 10-3 at PageID 1286.)  As the ALJ pointed out many times throughout his

decision, Plaintiff was an active tennis player during the time in question.  (ECF No. 9-2 at

PageID 54; *see, e.g.*, ECF No. 10-3 at PageID 1302 (including a note by a nurse in March 2015

stating that "pt is very athletic-plays tennis weekly").)

Remember this missed appointment was an initial evaluation or a *consultation*.  (ECF No.

10-3 at PageID 1293.)  In other words, this is not a situation where Plaintiff missed an occasional

physical therapy appointment because she did not feel well and the ALJ held that against her.

Rather Plaintiff did not attend the evaluation or consultation, meaning that she also failed to

attend any later physical therapy appointments that the therapist may have prescribed.  So the

Court finds it acceptable that the ALJ considered the missed consultation in assessing Plaintiff's

symptoms and how they may limit her life.  This is particularly true given the ALJ asked

Plaintiff about missing medical appointments during the March 2017 hearing, therefore letting

her explain the situation and showing that he was considering why she may have missed the

appointment.

Plaintiff also challenges the ALJ considering her physical activity.  It is true that the ALJ

noted Plaintiff's physical activity.  (ECF No. 9-2 at PageID 41–57.)  In fact, he pointed out that

Plaintiff played tennis regularly during the period in question.  (*Id.* at PageID 54; *see, e.g.*, ECF

No. 10-3 at PageID 1302.)  But this is not improper.  ALJs may look to a plaintiff's daily

activities when evaluating subjective symptoms.  *See* 20 C.F.R. § 404.1529 ("Factors relevant to

your symptoms, such as pain, which we will consider include: (i) Your daily activities….");

*Knapp v. Comm'r of Soc. Sec.*, No. 22-2055, 2023 WL 6800153, at *3 (6th Cir. Oct. 16, 2023)

("The ALJ reasonably relied on [the Plaintiff's] ability to carry out some activities of daily

living, such as driving, shopping, fixing meals, doing small loads of laundry, and feeding and

caring for her pet dog, in concluding that she was not as limited as she had claimed.").  In the

end, by considering her tennis playing, the ALJ did not err here.

Lastly, Plaintiff broadly claims that the ALJ selectively relied on evidence.  (*See* ECF

No. 27 at PageID 2018.)  But Plaintiff has not pointed the Court to any evidence that the ALJ

ignored.  (*See id.*)  Rather, the ALJ's decision reflects that he considered an ample amount of

evidence.  (*See* ECF No. 9-2 at PageID 41–57.)  And it is not the Court's duty to comb through

the entire administrative record to see if there may be evidence the ALJ understated.  The key is

whether the ALJ's conclusions are supported by substantial evidence.  The Court finds that the

record has substantial evidence supporting the ALJ's decision here.  And the Court finds that the

ALJ made no error with the evidence he considered.

## II.    Medical Expert's Testimony

Next, Plaintiff alleges that the ALJ started "the hearing late, causing the Medical

Professional who testified to leave early without addressing whether the plaintiff's condition was

chronic and unlikely to disappear.  According to the U.S. National Center for Health Statistics, a

chronic condition or disease is defined as one lasting 3 months or more and cannot be cured by

medications or vaccines."[5]  (ECF No. 27 at PageID 2018.)  But Plaintiff is mistaken on this

point.  The record shows that the Medical Expert testified that Plaintiff's condition was chronic.[6]

(*See* ECF No. 9-2 at PageID 157–58.)  Indeed, the following exchange occurred:

---

[5] The ALJ had good reason to start late.  They had technical issues and the medical professional
Plaintiff refers to was in another hearing.  (ECF No. 9-2 at PageID 118.)  So the ALJ waited until
the medical professional finished testifying in the other matter before beginning Plaintiff's
hearing.  (*Id.*)
[6] The Medical Expert testified at the hearing on March 1, 2021.  (*See* ECF No. 9-2 at PageID
115.)

[Representative]:  Right.  So would you consider the claimant's condition a chronic condition?

[Medical Professional]:  Yes

[Representative]:  Okay.  Thank you.

[Medical Professional]:  By definition and social security condition has to last for 12 months or longer to be considered a severe impairment.  So when I said the osteoarthritis and the head [*sic*] headaches for severe impairment, that's what I meant.

(*Id.*)  The ALJ also found that "[s]ince January 6, 2014, the claimant has continued to have a severe impairment or combination of impairments," showing that the ALJ found that Plaintiff has a chronic condition.  (*Id.* at PageID 42.)  So Plaintiff points to no error here.

## III.    Veteran Affairs Disability Rating

Although her claim is unclear, Plaintiff next seems to argue that the ALJ did not adequately consider her Veteran Affairs disability rating.  (ECF No. 27 at PageID 2018–19.)  But the ALJ made no error here.   As the Sixth Circuit has stated, "[t]hough other agencies make their own decisions about benefits eligibility, the Social Security Administration's regulations clearly instruct that the Commissioner is not bound by those decisions."  *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 310 (6th Cir. 2018) (citing 20 C.F.R. § 404.1504).[7]  That said, the

---

[7] As the relevant regulation provides,

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers— make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules.  Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules.

20 C.F.R. § 404.1504.

Sixth Circuit requires that an ALJ "at least consider a VA's disability decision and explain reasons for the weight she assigns to it."[8]  *Id.* (citation omitted).

The ALJ made no error here.  In his decision, the ALJ noted "that the Department of Veterans Affairs has purportedly assigned the claimant a service-connected disability rating of 70 percent with a 10% rating for migraines and 0% for loss of motion of ring or little finger (14F/23 and 17F/40)."  (ECF No. 9-2 at PageID 52.)  The ALJ then gave this Veteran Affairs disability rating little weight.  (*Id.*)  In doing so, the ALJ explained that the disability determination process for Veteran Affairs is "fundamentally different" than the Social Security Administration's.  (*Id.*)  In fact, the ALJ explained that the Department of Veteran Affairs does not complete a "function-by-function assessment of an individual's capabilities.  (*Id.*)  So the ALJ considered the Veteran Affairs disability rating and explained his reasoning for giving it little weight.  The ALJ did not err here.

## IV.    Medical Opinion

Plaintiff next argues that the ALJ "failed to consider" the opinion of Dr. Marvin Jones. (ECF No. 27 at PageID 2019.)  But again, Plaintiff is incorrect and imprecise.  The ALJ considered Dr. Jones' opinion, but he assigned it "little weight."  (ECF No. 9-2 at PageID 49–50.)  The ALJ explained that Dr. Jones' opinion was "heavily based on the claimant's subjective complaints and is not supported by the treatment record."  (*Id.*)  For all that, the ALJ added "a restriction related to temperature extremes in consideration of Dr. Jones' opinion as it is consistent with statements made by the claimant to other physicians."  (*Id.* at PageID 50.)

---

[8] For claims filed after on or after March 27, 2017, an ALJ need not explain how he considered the Veteran Affairs disability rating.  *See* 20 C.F.R. § 404.1504; *McKendrick v. Kijakazi*, No. 3:21-CV-224-JEM, 2022 WL 1508890, at *4 (E.D. Tenn. May 12, 2022).  Plaintiff filed her claim before March 2017.

Under 20 C.F.R. § 404.1527,[9] when considering a medical opinion of a non-treating source like Dr. Jones here, an ALJ considers several factors in deciding how much weight to give the opinion.  These factors include whether the physician examined the plaintiff, the nature and extent of the relationship, how well medical evidence supports the opinion, the consistency of the opinion with the record, and the physician's specialty.  20 C.F.R. § 404.1527(c).

The ALJ's decision shows that he considered the factors appropriately.  *See Thompson v. Comm'r of Soc. Sec.*, No. 1:19-CV-644, 2020 WL 3410350, at *4 (S.D. Ohio June 22, 2020), *report and recommendation adopted*, 2022 WL 178512 (S.D. Ohio Jan. 20, 2022); *cf. Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor.").  In particular, the ALJ noted that the medical opinion was based on Plaintiff's "subjective complaints."  (ECF No. 9-2 at PageID 50.)  To that end, the ALJ noted that "Progress notes consistently document the claimant reported being an avid tennis player and described herself as being very active during the period at issue."  (*Id.*; *see also* ECF No. 9-2 at PageID 54; *see, e.g.*, ECF No. 10-3 at PageID 1302.)  He also noted that Plaintiff "reported caring for her 20-pound child" and that "[p]hysical exam findings also document a normal gait, with the exception of a few occasions."  (ECF No. 9-2 at PageID 50; *see, e.g.*, ECF No 9-2 at PageID 141; ECF No. 10-3 at PageID 1070.)  So it is evident the ALJ sufficiently considered the right factors, particularly whether the opinion was supported by medical evidence and consistent with the record.  And so the Court finds that substantial evidence supports the ALJ's decision to give "little weight" to Dr. Jones' opinion.  The ALJ made no error here.

---

[9] This regulation applies here because Plaintiff filed her initial claim before March 27, 2017, and Plaintiff's prior continuing disability review occurred before March 27, 2017.  HALLEX I-5-3-30(IV)(E)(1); (*see* ECF No. 9-3 at PageID 341).

**V.    Vocational Factors**

Plaintiff next claims that the ALJ did not adequately consider her age, her lack of past

relevant work experience, or her lack of transferrable skills.  (ECF No. 27 at PageID 2019; ECF

No. 30 at PageID 2033.)  About her age, Plaintiff asserts that she should be classified as an

individual closely approaching advanced age.[10]  And as for her vocational factors, Plaintiff

argues that the "ALJ's use of a general vocational expert's analysis did not adequately consider

these factors."  (ECF No. 30 at PageID 2033.)

But as shown below, the ALJ made no error in considering Plaintiff's vocational factors.

Indeed, the Vocational Expert's analysis considered Plaintiff's vocational factors.  And a

Vocational Expert's testimony may serve as substantial evidence for an ALJ's decision.  *Norris*

*v. Comm'r of Soc. Sec.*, 139 F.4th 541, 547 (6th Cir. 2025) ("The testimony of a qualified

vocational expert may amount to substantial evidence."); *Moats v. Comm'r of Soc. Sec.*, 42 F.4th

558, 562 (6th Cir. 2022) ("[W]hen a qualified vocational expert testifies that a person with the

claimant's work experience and physical limitations could perform a significant number of jobs

available in the national economy, the ALJ has a solid basis for denying disability benefits.").

The ALJ asked the Vocational Expert here whether an individual with Plaintiff's RFC

could perform a job existing in significant numbers.  (ECF No. 9-2 at PageID 110–12.)  And in

posing this hypothetical, the ALJ asked the Vocational Expert to "assume an individual 49 to 52

---

[10] In his decision, the ALJ found that Plaintiff was a younger individual as of Janauy 6, 2014.
(ECF No. 9-2 at PageID 55.)  But the ALJ also considered that during the relevant time, which is
between January 6, 2014, and December 31, 2017, that Plaintiff became an individual
approaching advanced age.  Indeed one of the grid rules the ALJ looked to was Grid Rule
202.20, which applies to individuals approaching advanced age.  (*Id.* at PageID 55–56.)  And, as
described next, in his hypothetical posed to the Vocational Expert, the ALJ asked the Vocational
Expert to assume an individual from 49 to 52, showing the Vocational Expert and ALJ accounted
for both of Plaintiff's relevant age categories.  (*Id.* at PageID 110.)

which is the DLI and further assume the 12th grade education and no PRW."[11]  (*Id.* at PageID

110.)  So the ALJ's hypothetical reflected Plaintiff's age up to her date last insured and the fact

that she has no past relevant work.

In response to the ALJ's hypothetical, the Vocational Expert found that such an

individual could be an Office Helper, Cashier II, or a Ticket Taker. [12]  (*Id.* at PageID 56, 112.)

Then based on this testimony, the ALJ found that "since January 6, 2014, the claimant was

capable of making a successful adjustment to work that existed in significant numbers in the

national economy." (*Id.* at PageID 56.)  Accordingly, the ALJ found that Plaintiff's disability

ended on January 6, 2014, and that she did not become disabled again before her date last

insured of December 31, 2017.  (*Id.*)  All of this shows that both the Vocational Expert and ALJ

correctly considered Plaintiff's vocational factors, including her age, lack of past relevant work,

and lack of transferrable skills.  So there is no error here.

## VI.    Trial Work Period

Lastly, Plaintiff asserts that the SSA failed to provide her with a trial work period before

ending her benefits.  (ECF No. 27 at PageID 2019–20.)  But it is not necessary that a disability

beneficiary complete a trial work period before the SSA terminates benefits.  Rather a trial work

period allows a disability recipient to test her ability to work without risking her benefits. *See* 20

C.F.R. § 404.1592(a).  During the hearing, the ALJ explained that the trial work period was not

at issue here.  (ECF No. 9-2 at PageID 103.)  And this Court agrees.  Plaintiff's benefits ended

---

[11] DLI refers to the date last insured and PRW refers to past relevant work.
[12] In line with the ALJ's hypothetical, all these positions are unskilled jobs, showing the
vocational expert addressed that Plaintiff does not have transferrable skills.  (ECF No. 9-2 at
PageID 56, 112.)

because of medical improvement, not any work activity. So Plaintiff alleges no error related to the lack of a trial work period.

## VII.    Substantial Evidence

In the end, Plaintiff has identified no error, and substantial evidence supports the ALJ's decision. While Plaintiff broadly argues in her Reply that the ALJ "applied an overly optimistic view of what 'light work' entails" and that "the limitations imposed by her migraines and joint pain, especially given her age and lack of past relevant work experience, render even minimal work tasks excessively taxing," the Court finds that substantial evidence supports the ALJ's findings. (*See* ECF No. 30 at PageID 2033.) As described above, the ALJ properly considered the medical opinions in the record, Plaintiff's treatment records, Plaintiff's daily activities, and the missed medical physical therapy consultation. (*See* ECF No. 9-2 at PageID 46–55.) And, throughout his decision, the ALJ explained his reasoning.

## <u>CONCLUSION</u>

As a result, for the reasons above, the Court finds that substantial evidence supports the ALJ's decision and finds no legal error. The Court therefore **AFFIRMS** the Commissioner's decision that Plaintiff is not disabled under the Social Security Act.

**SO ORDERED**, this 22nd day of August, 2025.

    s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE